UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10191-RGS

JEAN JOSEPH and MARIE JOSEPH

v.

CITY OF BOSTON, A MUNICIPAL CORPORATION,
EDWARD P. DAVIS III AS CHIEF OF POLICE,
OFFICER JOHN DOE 1, and OFFICER JOHN DOE 2

MEMORANDUM AND ORDER ON
DEFENDANT CITY OF BOSTON'S
MOTION TO DISMISS

March 12, 2011

STEARNS, D.J.

Plaintiffs Jean and Marie Joseph brought this action in the Massachusetts Superior Court alleging violations of their federal and Massachusetts state civil rights, common-law assault, the intentional infliction of emotional distress, false arrest, and the abuse of process by two unidentified Boston police officers (John Doe Officers 1 and 2), the City of Boston, and Edward P. Davis, III, in his official capacity as Chief of Police.[1] The Josephs' claims arise out of an early morning traffic stop during which the unidentified officers allegedly "deprived them of their Fourth and Fourteenth

---

[1] Although named as "Chief of Police," Davis's official title is that of Police Commissioner, which is a civilian, not a police rank.

Amendment rights." Compl. ¶ 1. The City removed the case to the U.S. district court on federal question grounds and has since moved to dismiss the Josephs' municipal claims. In Count IV of the Complaint, brought under 42 U.S.C. § 1983, the Josephs allege that the City under Commissioner Davis' leadership has "developed and maintained policies, practices, or customs exhibiting deliberate indifference to [the Josephs'] constitutional rights." More specifically, the Josephs allege that the City maintained a policy or custom of "inadequately and improperly" investigating citizen complaints against Boston police officers. Count VI makes the same generic allegations against the City and Chief Davis under the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, §§ 11H and 11I. In their Opposition, the Josephs appear to concede that a municipality is not a "person" amenable to suit for money damages under the MCRA. S*ee Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591-592 (2001). The Josephs, however, defend their section 1983 claim, arguing that Count IV adequately alleges "the existence of a policy or custom as well as a causal link between the policy and/or custom and the unconstitutional harm." Opp'n at 6.

## BACKGROUND

The following facts are drawn from the Josephs' Complaint and for present purposes must be taken as true. On December 10, 2008, Jean Joseph was driving his

wife Marie to work at 4:50 a.m.[2] They were stopped behind another vehicle at a red light at the intersection of Melnea Cass Boulevard and Massachusetts Avenue in Boston. When the light turned green and the vehicle in front of them failed to move, Jean Joseph honked his horn. The vehicle drove forward briefly and then came to a stop. Jean Joseph changed lanes to pass the vehicle to its left. As he did so, the occupants of the vehicle activated flashing police lights. Jean Joseph pulled his car immediately over to the curb.

The driver emerged from the vehicle and yelled at the Josephs, "What the hell do you think you are doing?" Two Boston Police cruisers arrived at the scene flanking the Josephs' vehicle from its two sides. A uniformed officer took a position at the front of the Joseph's car to prevent any forward movement. Two of the officers berated and cursed the Josephs, repeatedly ordering them to "look straight ahead" and "do not look at me." After obtaining Jean Joseph's license and registration, the officers detained the Josephs at the scene for approximately fifty minutes. Officer 1 eventually issued Jean Joseph citations for "improper/unsafe passing", "speed greater then reasonable/proper", and "following too closely." The Josephs describe the officers' behavior as "so brutal and threatening that [they] feared for their lives and Mrs. Joseph soiled herself and had

---

[2] The Josephs are of African/Haitian descent and are both in their late 50s.

to return home to change clothing before going on to work." Compl. ¶ 10.

On January 9, 2009, Jean Joseph appeared before a Clerk-Magistrate to object to the issuance of the motor vehicle citations. Joseph explained his version of the incident to the Clerk-Magistrate who dismissed the citations without any finding of liability.[3] The Josephs filed a citizens' complaint with the Boston Police Department and cooperated with the subsequent investigation, which concluded without any disciplinary action being taken against the officers. The Josephs believe that the Department "trivialized the conduct of its officers as 'discourteousness.'" *Id*. ¶ 12. They then filed this Complaint in the Superior Court.

## DISCUSSION

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. at 555 (internal citations omitted). *See also Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95-96 (1st Cir. 2007). "When there are

---

[3] It is apparent from the "John Doe" caption of the Complaint that the officers did not appear for the hearing. *See Reading v. Murray*, 405 Mass. 415, 417 (1989).

well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

To prove their claim that the City is liable under 42 U.S.C. § 1983, the Josephs must show: (1) that they suffered the deprivation of a constitutional right(s); (2) that the officers that caused the harm were acting under color of state law; (3) that the City had an unconstitutional policy, custom or practice; and (4) that the custom, policy or practice was the moving force behind the officers' violation of the Plaintiffs' constitutional right(s). *See Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690-691 (1978); *Young v. City of Providence*, 404 F.3d 4, 25-26 (1st Cir. 2005). Further, a municipality can only be liable under § 1983 for a custom or policy of failing to discipline or supervise its officers if that failure causes a constitutional violation or injury and "'amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *DiRico v. City of Quincy*, 404 F.3d 464, 468-469 (1st Cir. 2005), quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

At the outset, it is apparent that the § 1983 claim (Count I), which is premised on a violation of the Fourth Amendment, is unsustainable as pled. The Josephs allege that they were the victims of an arrest made without probable cause. However, under the facts as alleged, there was no arrest. The most that is said in the Complaint is that

5

the Josephs were stopped by officers, detained at the scene, issued traffic citations, and then permitted to go on their way. The "Rules of the Road" violations described in the Complaint are civil motor vehicle infractions for which there is no right of arrest. *Compare* Mass. Gen. Laws ch. 90C, § 3 (Issuance of Warnings or Citations for Civil Motor Vehicle Infractions), *and* Mass. Gen. Laws ch. 90, § 21 (Arrest Without Warrant for Certain Violations). Nor is there any allegation that the Josephs were taken into custody. Although the Complaint alleges that the vehicle violations were not witnessed by the officers, State law specifically provides that a citable offense need not occur in an officer's presence. *See* Mass. Gen. Laws ch. 90C, § 2 ("[A]ny police officer assigned to traffic enforcement duty shall, whether or not the offense occurs within his presence, record the occurrence of automobile law violations upon a citation . . . .").[4] Finally, while the Complaint alleges that the Josephs were detained as the officers verified Jean Joseph's driver's license and registration, it is settled Fourth Amendment law that an officer has the right to demand identification (including a driver's license and registration) from a person stopped for a motor vehicle offense, as well as the right to detain the person while conducting a check of Registry records and

---

[4] Even were State law to the contrary, it would have no significance for the Josephs' case as § 1983 secures federal and not state-protected rights. *See Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 5-6 (1st Cir. 1997).

6

issuing citations. *See United States v. Fernandez*, 600 F.3d 56, 62 (1st Cir. 2010). *See also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop."). The churlish manner in which the officers treated the Josephs, if things transpired as alleged in the Complaint, is regrettable, indeed censurable, but it does not implicate any of the protections of the United States Constitution.[5]

ORDER

For the foregoing reasons, the City of Boston's motion to dismiss the federal claims alleged against it and Commissioner Davis (Count IV), and by implication the federal claim against the individual officer defendants (Count I) is <u>ALLOWED</u> without prejudice. Plaintiff will have twenty-one (21) days to attempt to amend the Complaint to plead a viable federal claim. *See Future Dev. of P.R., Inc. v. Estado Libre Asociado de P.R.*, 144 F.3d 7, 14 (1st Cir. 1998). If plaintiffs elect not to do so, the State

---

[5] Because there is no identifiable federal *constitutional* injury pled in the Complaint, it follows that there is no viable *Monell* claim either. A municipality cannot be held liable under § 1983 simply because it employs a tortfeasor. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992). *Cf. Hernandez v. Sheahan*, 455 F.3d 772, 774 (7th Cir. 2006) ("[U]nits of government can be liable under § 1983 only for unconstitutional policies, as opposed to errors in the implementation of valid policies.").

7

common-law claims, as well as the claim of a violation of the MCRA, will be REMANDED to the Superior Court.[6]

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[6] *See Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").